GREGORIS v MANOS et

Ohio Appeals, 2nd Dist, Franklin Co

No 3332. Decided Nov 6, 1941

William E. McKinley, Columbus, and D. T. Keating, Columbus, for plaintiff-appellant.

Henderson, Burr, Randall & Porter, Columbus, and Lawrence Stanley, Columbus, for defendants-appellees.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment entered on the verdict of a jury in behalf of defendants-appellees. The action was for damages for injuries claimed to have been suffered by reason of the malpractice of defendants upon the body of the plaintiff in the unnecessary and negligent performance of a surgical operation.

There are five assignments of error:

1. Refusal to admit certain testimony proffered by plaintiff.

2. In admitting testimony of certain doctors predicated upon a physical ex-

amination made by them of the plaintiff in the court room after the plaintiff had rested his case in chief.

3. Refusal of the trial judge to give to the jury before argument special charge Nos. 1 and 2 requested by plaintiff.

4. In not permitting counsel for plaintiff to use full time allotted to counsel for their argument to the jury.

5. Other errors manifest on the record.

Issues were drawn by the averments of the third amended petition and the answer thereto. We quote somewhat at length from the pleadings because it is vital to a proper determination of some of the errors assigned that the issues be well defined.

It is alleged in the petition that the defendants are regular licensed physicians practicing in the City of Columbus; that defendant, Dr. Manos, was employed on or about July 1st, 1938, to treat the plaintiff for sickness involving the groin, the appendix and the rectum; that plaintiff was also suffering from a disorder of his nervous system, and that said defendant accepted employment to care for and treat the plaintiff; that the defendant, Dr. Hoburg, about a year later, namely, January 1st, 1939, was employed to treat the plaintiff for the ills above mentioned, accepted employment and attempted to care for and treat the plaintiff; that on or about July 6, 1939, plaintiff called at the office of defendant Dr. Manos who instructed the plaintiff to go to the office of defendant Dr. Hoburg, with the statement that he, Dr. Manos, "would meet plaintiff at said office about five o'clock in the afternoon, at which time further treatment would be given the plaintiff; that at said time and place defendants told plaintiff that it was necessary to inject a needle in a cyst in his scrotum, and withdraw the fluid from said cyst, but said puncturing of said cyst was wholly unnecessary. Thereupon they carelessly and negligently punctured said cyst and tore a vein in the scrotum of plaintiff causing him to lose much blood and to suffer severely, both mentally and physically".

"Defendants then operated upon plaintiff and opened his scrotum so as to tie the vein, which they had so unnecessarily, carelessly and negligently punctured, without giving the plaintiff time or opportunity to get to a hospital or to consult another surgeon. The after-effects of the operation are set forth as the basis of the damages claimed by plaintiff."

Defendants filed separate answers. Dr. Hoburg's answer was directed to plaintiff's original petition as was Dr. Manos' answer. Thereafter, an entry was journalized disclosing agreement between the parties that the answers filed to the amended petition were to be considered as filed to the second amended petition, but no such entry appears as to the third amended petition, although it is obvious that by common consent the separate answers, as filed by the defendants, were treated as having been set up to meet the averments of the third amended petition and we so consider them.

At the outset it is necessary to call attention to the fact that in the original petition, the amended petition and the second amended petition it was expressly averred that the surgical operation that was performed upon the plaintiff, not only was not necessary, but that it was performed without the consent or sanction of the plaintiff.

The defense set up in the answer of Dr. Hoburg is that he was employed by the plaintiff to treat him for urethritis and the removal of a small cyst from the plaintiff's right cord just above the right testicle; and that he treated him for said condition and removed said cyst, and after admitting that he is a regular licensed physician practicing in the City of Columbus, generally denies the averments of the petition.

The answer of Dr. Manos is that he was employed by the plaintiff to render him professional treatment; that he referred the plaintiff to Dr. Hoburg for the removal of a small cyst from his right cord just above the right testicle, and that Dr. Hoburg removed

the cyst. In other particulars the answer is the same as Dr. Hoburg's.

The third amended petition omits any allegation that the operation was performed without the consent of the plaintiff. The allegation of Dr. Hoburg's answer that the plaintiff employed him to remove the cyst is undenied, as plaintiff filed no reply.

Testimony was offered and accepted as to plaintiff's consent to the operation for the removal of the cyst, and the trial judge charged the jury upon the question. There was no motion to amend the petition to conform to the proof.

We then consider errors assigned in the order in which they are set forth in the briefs.

1. Refusal of the court to admit certain testimony of C. F. Edwards and John Southard on behalf of plaintiff.

The defendants offered evidence at length to establish that the plaintiff was a psychoneurotic person, and the testimony of Dr. George T. Harding, an alienist, to that effect. The defendants themselves stated that the plaintiff was not sound mentally, and to support this conclusion testified as to his conduct, statements made by him, threats against a doctor who had treated him, and to complaints of various fancied afflictions from which he said he suffered.

This testimony was offered generally, was not limited in its purpose to show the condition of the plaintiff as of the date or at about the time of the operation, but may well have been offered and considered by the jury as affecting his state of mind at the time that he instituted his action, at the time of the trial and as it might affect the extent of his damages. The effect of this testimony was to make it appear that plaintiff's afflictions were more imaginary than real, that there was an insufficient physical cause for the ills of which he complained and that they could be accounted for only upon the hypothesis that he was mentally unbalanced.

Edwards was a supervisor for the Chesapeake & Ohio Railroad Company, to whom plaintiff, in his capacity as foreman of the maintenance of way of the road, reported directly. The witness had known the plaintiff for sixteen years and had seen him on an average of three times a week during many of the years that he had known him and at and about the time under consideration in the case.

The following questions were put to the witness in chief and upon objection were not permitted to be answered:

"Q. Did he (plaintiff) ever complain to you about sickness?
A. He has.
Q. In what way?"

Objection sustained because the witness was not an expert. The proffer by counsel for plaintiff was:
"I expect to show by this witness he worked with him a period of eight years and he showed no signs of a neurotic condition."

This proffer was not in proper form and was not representative of any answer that could have been responsive to the question. There is a proffer that the witness, if permitted to testify, would have stated that he never heard the plaintiff threaten to commit suicide but no question intended to elicit this answer appears in the record.

"Q. Did you ever hear him make any threats against any individual or person?"
Objection to this question was sustained over exception and the proffer,

"We expect the witness to answer that he never heard any."

The Court then said to the jury:
"The jury will disregard any of this testimony, it is not going to help the jury to determine whether this operation was negligently performed."

Obviously, it was not offered for that purpose.

Southard was Cost Engineer of the Chesapeak & Ohio; knew the plaintiff for thirteen or fourteen years, who worked under him, and the witness saw plaintiff on an average of two times a week. The record, respecting the acceptance or the rejection of the testimony of the witness, is uncertain. It appears that certain questions were propounded and answers made in the absence of the jury. At that time the witness was permitted to state in response to the questions that he did not hear the plaintiff make a threat to commit suicide and did not threaten any person; that he complained to the witness about sickness in the nature of cramps and abdominal pains. After this line of questions, which were permitted to be answered, the following appears in the record:

"Mr. McKinley: Let the record show that we recall Mr. Edwards to the stand for further questioning and note an objection and the objection is sustained."

We are unable to say whether or not the questions and answers heretofore discussed were submitted to the jury, so that the claimed error as to the witness, Southard, is not exemplified.

We are of opinion, that the questions propounded to Edwards to which answers were refused were proper and probative in view of the wide latitude that was extended to the defense as to the same subject-matter. However, the answers refused were cumulative, in part, and were so meager that in all probability they could not have affected the verdict, and, therefore, refusal to accept them was not prejudicial.

2. Error in the court in admitting the testimony of Doctors Smith, Hoy, Harding and LeFever, who were permitted to examine the plaintiff in the court room after he had completed his case and over his objection at the time because he was prevented from offering any testimony in rebuttal to the testimony of said doctors. It was with-

in the sound discretion of the trial judge to permit the examination at the time and the place as appears in the record.

It is suggested in plaintiff's brief that his counsel were taken by surprise because they had been told that but one doctor would be offered as a witness on behalf of defendants and that when four doctors were brought into the presence of the jury it had an undue and improper effect against the plaintiff and prevented him from offering testimony in rebuttal of the testimony of the doctors. The aforesaid element of surprise does not appear in the record; from it we can not say that counsel had no notice that the defendants expected to use more than one medical witness. Nor does the record disclose that plaintiff made any request of the court for continuance to give opportunity to bring experts to testify in refutation of the evidence of the doctors for the defense. No one of the four doctors, except Dr. Harding, testified to anything substantial respecting the mental condition of the plaintiff, giving as ther reasons for the refusal, either that they did not have sufficient time to make the examination, or that they did not feel qualified to express an expert opinion on the subject. Their testimony was confined in the main to their findings from the physical observations of the sexual parts of the plaintiff as to the effect of the operation upon the scrotum. This examination, no doubt, was made upon brief observation of the plaintiff and without physical discomfort. The plaintiff had ample notice that Dr. Harding might testify because of his examination of the patient and diagnosis of his illness months before the operation.

If the record supported the claim of the plaintiff that the four doctors were brought into the presence of the jury without any prior notice to his counsel that they were to testify on behalf of the defendants, his counsel had objected to their testimony under the circumstances, claimed surprise and

sought a continuance by reason thereof and the court had refused the continuance, we would have a substantial question which is not presented upon this record.

Lest we be misunderstood, it is our opinion that ordinarily, where a defendant desires to have a physical examination of a plaintiff made the Court should require that such request be made at an early date, generally in advance of the day of trial, ▬▬▬▬▬ and in no event at a time later than the beginning of the trial. It is due the plaintiff and his counsel that they have timely notice of the purpose of the defense to make a physical examination of the plaintiff and it is only fair that he not be subjected to the physical and mental strain which may attend such examination during the progress of his case. The plaintiff is entitled to be in the best physical and mental condition to meet the ordeal incident to the presentation of his case in a trial before a judge and jury.

3. Refusal of the court to give plaintiff's special requested charges Nos. 1 and 2 to the jury before argument.

Special charge No. 1:

"If you find from a preponderance of the evidence that the plaintiff did not consent to treatment other than the use of the needle in treating the cyst, and you further find from the preponderance of the evidence that the operation by the use of the knife was performed without the consent of the plaintiff, then your verdict must be for the plaintiff."

. In view of the state of the pleadings, heretofore adverted to, the Court was not required to give ▬▬▬▬▬ this charge because it included the issue of the consent of the plaintiff to the operation removing the cyst. Had the issue been properly drawn the charge was correct and included the very crux of plaintiff's right to recover, namely, that the operation was performed without his consent.

The jury could have found, had the pleadings permitted, if it believed plaintiff's testimony, which it had the right to do, that the needle was to be used for diagnostic purposes and that nothing other or further was to be done and that when the doctors proceeded to perform the surgical operation, it not only was without the consent of the plaintiff but in direct violation of the statements of Dr. Manos of what was to be done to the plaintiff in Dr. Hoburg's office. The plaintiff had the right to decide whether or not he should be operated, which right would attend no matter how necesary the operation nor how imminent the danger if it not be performed.

The courts have held that the right to control one's own body as against surgical intervention may not be disregarded. The consent of ▬▬▬▬▬ the plaintiff was necessary before the defendants could lawfully perform the operation. **Wells v Van Nort, 100 Oh St 101;** Cuthreil v Protestant Hospital, Par. 375, Kinkead on Torts. The general charge of the court, had the issue been drawn, was prejudicial to the plaintiff, as were the observations of the court during the taking of the testimony on the subject of the consent of the plaintiff to the operation.

Special charge No. 2:

"If you find from a preponderance of the evidence that the operation performed by the defendants was unnecessary, then your verdict must be for the plaintiff."

This charge was properly refused because under the pleadings it must be said that plaintiff con- ▬▬▬▬▬ sented to or requested that the operation be performed.

Assignment of error No. 4: Refusal of the court to permit one of counsel for plaintiff to complete the argument on behalf of the plaintiff within the time limit fixed by the trial judge.

It develops that the court had allotted a half an hour a side to counsel for the parties. Plaintiff's made the

opening argument and did not consume all of the time. Defendant's counsel waived argument. Thereupon plaintiff's counsel asked leave to continue argument to the limit of the time allotted.

The record is silent as to time allotted, not clear whether or not the court had required counsel for plaintiff to divide their time in the argument in chief and rebuttal, or if they could use all of it in the argument in chief. Unless it affirmatively appear that both of counsel for plaintiff reserved the right to argue in chief, we would assume that one of counsel would first argue, followed by the answering argument and rebuttal argument by plaintiff's counsel. In this situation the defendant's counsel having waived argument, the court committed no error in limiting the argument on behalf of the plaintiff as found in the record.

Judgment affirmed.

GEIGER, PJ. and BARNES, J., concur.